AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

FILED

AUG 2 9 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

One Silver Iphone S A1687, FCC ID: BCG-E2944A
IC: 579C-E2944A

)
)
)
)
)
)

Case No.

## 18MJ4693

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of controlled substances and conspiracy to do the same |

The application is based on these facts:
See attached Affidavit of HSI Special Agent Valentin Obregon Jr.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Valentin Obregon Jr., HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _August 29, 2018_

_____
*Judge's signature*

City and state:  San Diego, CA

Honorable Clinton Averitte, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> One Silver Iphone S A1687
> FCC ID: BCG-E2944A
> IC: 579C-E2944A
> (**Target Device #2**)





**Target Device # 2** is currently held at Homeland Security Investigations, Special Agent in Charge, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## ATTACHMENT B-2

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 1, 2017 up to and including November 29, 2017:

    a.     tending to indicate efforts to import methamphetamine/cocaine, or some other federally controlled substances from Mexico into the United States;

    b.     tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine/cocaine, or some other federally controlled substances from Mexico into the United States;

    c.     tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine/cocaine, or some other federally controlled substances from Mexico into the United States;

    d.     tending to identify travel to or presence at locations involved in the importation of methamphetamine/cocaine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.     tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

## AFFIDAVIT

I, Valentin Obregon Jr, Special Agent with Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

### INTRODUCTION

1.     This affidavit supports applications for warrants to search the following electronic devices, as further described in Attachments A-1 and A-2, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960 and 963, as more particularly described in Attachments B-1 and B-2:

      a.     One Doppio F1810
                Serial No. N2GF1810
                IMEI: 356945071388892
                (referred to individually as **Target Device #1**; Attachment A-1);

      b.     One Silver Iphone S A1687
                FCC ID: BCG-E2944A
                IC: 579C-E2944A
                (referred to individually as **Target Device #2**; Attachment A-2)

(**Target Device #1** and **Target Device #2** are referred to collectively as the **Target Devices**.)

2.     On November 29, 2017, the **Target Devices** were seized from Jose Hiram COLON-Ortiz at the Otay Mesa, California, Port of Entry (POE) following his arrest for importing 22.18 kilograms of cocaine and 3.70 kilograms of methamphetamine into the United States from Mexico.  The **Target Devices** are presently held at Homeland Security Investigations, Special Agent in Charge, located at 880 Front Street, Suite 3200, San Diego, California 92101.

3.     COLON-Ortiz is charged with importation of cocaine and methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, United States v. Colon-Ortiz, 17CR4472-DMS. Trial is set for September 17, 2018.

/ / /

/ / /

1

4.     These are the second search warrant applications for the **Target Devices**. We seek a second search warrant for **Target Device #1** to ensure that the forensic analysis performed pursuant to the initial search warrant captured all relevant SMS text messages on **Target Device #1**. We seek a second search warrant for **Target Device #2** because the forensic analysis performed pursuant to the initial search warrant revealed that the telephone is password protected, and we have the password. Given that the time to examine the **Target Devices** pursuant to the initial search warrants has lapsed, we are seeking a second search warrant to examine each telephone.

5.     Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2.

6.     The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining search warrants for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

### EXPERIENCE AND TRAINING

7.     I am a Special Agent with HSI and am currently assigned to a Contraband Smuggling Investigations Group in San Diego, California. I have over five years of combined experience as a Special Agent and as a Task Force Officer with U.S. Customs and Border Protection. I am a graduate of the Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, GA. I have received basic training in conducting narcotics smuggling investigations and the enforcement of numerous Immigration and Customs laws within the United States. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics

2

1   smugglers in the normal course of their illicit activities. I graduated from the University of
2   Illinois at Chicago with a Bachelors of Liberal Arts and Sciences degree in Criminal Justice
3   Administration.

4         8.    Since becoming an HSI Special Agent, I have been involved in numerous
5   narcotics trafficking investigations involving the importation, distribution, and sale of large
6   quantities of controlled substances. In the course of my duties, I have worked as the case
7   agent directing specific drug-related investigations; I have worked as a surveillance agent
8   and observed and recorded movements of individuals trafficking in drugs and of those
9   suspected of trafficking in drugs; I have initiated and executed numerous arrests for drug-
10  related offenses, including the importation of controlled substances; and I have interviewed
11  defendants, witnesses, and informants relative to the illegal trafficking of controlled
12  substances. Through my observations and these interviews, I have gained a working
13  knowledge and insight into the normal operational habits of narcotics smugglers, with
14  particular emphasis on those who attempt to import narcotics into the United States from
15  Mexico at the San Diego international ports of entry.

16        9.    Through the course of my training, investigations, and conversations with
17  other law enforcement personnel, I am aware that it is a common practice for narcotics
18  smugglers to work in concert with other individuals and to do so by utilizing cellular
19  telephones, pagers, and portable radios to maintain communications with co-conspirators
20  in order to further their criminal activities. Conspiracies involved in the smuggling and
21  trafficking of narcotics generate cellular phone-related evidence such as voicemail
22  messages referring to the arrangements of travel and payment, names, photographs, text
23  messaging, and phone numbers of co-conspirators. For example, load drivers smuggling
24  controlled substances across the border are typically in telephonic contact with co-
25  conspirators immediately prior to and following the crossing of the load vehicle, at which
26  time they receive instructions on how to cross and where and when to deliver the controlled
27  substance.

28  / / /

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. The use of cellular telephones by conspirators or drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to indicate efforts to import cocaine/methamphetamine, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine/methamphetamine, or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine/methamphetamine, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine/methamphetamine, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices** and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

/ / /

5

## FACTS SUPPORTING PROBABLE CAUSE

### Investigation Overview

13.   On November 29, 2017, COLON-Ortiz applied for entry into the United States from Mexico through the Otay Mesa POE as the driver, registered owner, and sole occupant of a white 2001 Acura TL with CA license plate number 7VEM885.

14.   A Customs and Border Protection (CBP) Officer assigned to the primary booth noticed that COLON-Ortiz's hand was shaking when he handed over his entry documents, and that he had a blank stare with his eyes wide open. The CBP Officer asked if he owned the vehicle, to which COLON-Ortiz responded that he did. COLON-Ortiz further stated that he was going to the DMV. The CBP Officer conducted a cursory inspection of the vehicle and discovered a speaker box in the trunk, which seemed very heavy.

15.   Another CBP Officer and his assigned Human and Narcotic Detection Dog (HNDD) screened the speaker box, to which the HNDD alerted. COLON-Ortiz was removed from the vehicle and escorted to the secondary lot, along with his vehicle, for further inspection. There, the vehicle was driven through the z-portal, which revealed anomalies in the speaker box.

16.   A subsequent inspection of the vehicle by CBP Officers resulted in the seizure of approximately 8.14 pounds (3.70 kilograms) of methamphetamine and 48.80 pounds (22.18 kilograms) of cocaine. Three cellular phones were found in COLON-Ortiz's possession and subsequently seized by CBP. Two of the phones are the **Target Devices**. A third phone was identified as a Samsung Galaxy Note 3.

17.   Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that the **Target Devices** were used to coordinate the importation of cocaine and methamphetamine into the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices**, which may identify other

1  persons involved in narcotics trafficking activities. Accordingly, based upon my
2  experience and training, consultation with other law enforcement officers experienced in
3  narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit,
4  I believe that information relevant to the narcotics trafficking activities of COLON-Ortiz,
5  such as telephone numbers, made and received calls, contact names, electronic mail (e-
6  mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital
7  information are stored in the memory of the **Target Devices**.

8      18.    On April 20, 2018, the Honorable Andrew G. Schopler issued search warrants
9  for the **Target Devices**. HSI agents performed a forensic analysis of the **Target Devices**
10  pursuant to the warrants.[1]

11     19.    A forensic analysis of **Target Device #1** revealed multiple text messages
12  within the scope of the warrant. I have reviewed the text messages seized from **Target**
13  **Device #1** during the forensic analysis. I also conducted a post-arrest interview of
14  COLON-Ortiz on November 29, 2017, and I reviewed text messages on **Target Device #1**
15  with COLON-Ortiz during the interview. In reviewing a transcript of the interview, it
16  appears there may be text messages that I reviewed with COLON-Ortiz during the post-
17  arrest interview that were not captured during the forensic analysis. As such, we seek a
18  second search warrant for **Target Device #1** to manually review this telephone and
19  determine whether there are any text messages within the scope of the warrant that were
20  not captured during the forensic analysis. The analysis pursuant to the requested warrant
21  will include a physical examination of the text messages as they are maintained on the
22  device.

23     20.    Analysis of **Target Device #2** was previously unsuccessful because it is a
24  locked Iphone. In reviewing the transcript of COLON-Ortiz's post-arrest interview, I
25  realized that he provided a passcode – "562201" – to **Target Device #2** during the

26

27

28     [1]     A third search warrant was issued for a Samsung cellular telephone seized
from COLON-Ortiz. I do not seek another search warrant for that telephone.

1  interview.  Following issuance of the requested warrant, HSI will utilize the passcode to
2  perform a forensic analysis of **Target Device #2**.

3       21.    I know that drug trafficking conspiracies require intricate planning and
4  coordination.  In my experience, this often occurs days, weeks, or even months prior to the
5  actual importation of the drugs into the United States.  Coconspirators communicate with
6  one another in efforts to ensure success in getting their valuable cargo to its destination
7  within the United States.  Additionally, co-conspirators are often unaware of the subject's
8  arrest and will continue to attempt to communicate with the subject after the arrest to
9  determine the whereabouts of their valuable cargo. In this case, evidence supports probable
10  cause that COLON-Ortiz began working with his/her drug trafficking coconspirators as
11  early as October 1, 2017.  This is based upon a review of TECS records which revealed
12  recent crossings by COLON-Ortiz in the aforementioned vehicle found to contain
13  narcotics, dating back at least to October 1, 2017.  Given this, I respectfully request
14  permission to search the **Target Devices** for items listed in Attachments B-1 and B-2
15  beginning on October 1, 2017 up to and including November 29, 2017.

16                              **METHODOLOGY**

17       22.    It is not possible to determine, merely by knowing the cellular/mobile
18  telephone's make, model and serial number, the nature and types of services to which the
19  device is subscribed and the nature of the data stored on the device.  Cellular/mobile
20  devices today can be simple cellular telephones and text message devices, can include
21  cameras, can serve as personal digital assistants and have functions such as calendars and
22  full address books and can be mini-computers allowing for electronic mail services, web
23  services and rudimentary word processing.  An increasing number of cellular/mobile
24  service providers now allow for their subscribers to access their device over the internet
25  and remotely destroy all of the data contained on the device.  For that reason, the device
26  may only be powered in a secure environment or, if possible, started in "flight mode" which
27  disables access to the network.  Unlike typical computers, many cellular/mobile telephones
28  do not have hard drives or hard drive equivalents and store information in volatile memory

8

within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular/mobile telephones and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant. Analysis will include physical examination of the data contained on the **Target Devices** and use of the passcode "562201" in order to retrieve data from **Target Device #2**.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

25. Based on all of the facts and circumstances described above, there is probable cause to conclude that COLON-Ortiz used the **Target Devices** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963.

26. Because the **Target Devices** were promptly seized during the investigation of COLON-Ortiz's trafficking activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by COLON-Ortiz continues to exist on the **Target Devices**. As stated above, I believe that the date range for this search is from October 1, 2017 up to and including November 29, 2017.

1    27.    WHEREFORE, I request that the court issue a warrant authorizing law

2  enforcement agents and/or other federal and state law enforcement officers to search the

3  **Target Devices**, as described in Attachments A-1 and A-2, and seize the items listed in

4  Attachments B-1 and B-2, using the methodology described above.

5         I swear the foregoing is true and correct to the best of my knowledge and belief.

6

7

8                          Valentin Obregon Jr
                           Special Agent

9

10  Subscribed and sworn to before me this _____ day of August, 2018.

11

12

13  Honorable Clinton Averitte
    United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28